# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

CORY HOLLAND,

                Plaintiff,                CASE NO. 16-10817
                                        HON. DENISE PAGE HOOD

v.

BEST BUY STORES, L.P.,

                Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART
## MOTION FOR SUMMARY JUDGMENT [#27]

Now before the Court is a Motion for Summary Judgment filed on December 23, 2016 by Defendant Best Buy Stores, L.P. ("Defendant"). [Dkt. No. 27] Plaintiff, at the time a *pro se* litigant, filed a response to the Motion on January 9, 2017 [Dkt. No. 29], to which Defendant filed a reply. [Dkt. No. 30] After reviewing the briefs, the Court determined that the interests of justice warranted the appointment of pro bono counsel for Plaintiff and the filing of a supplemental response brief on Plaintiff's behalf. The first pro bono counsel withdrew before supplementing Plaintiff's response, and the Court appointed a second pro bono counsel. Plaintiff's second pro bono counsel recently filed a supplemental response brief, and Defendant timely filed a supplemental reply brief. For the reasons set forth below, Defendant's Motion is

1

granted with respect to Plaintiff's age discrimination claim, granted in part and denied in part with respect to Plaintiff's race discrimination claims, and granted in part and denied in part with respect to Plaintiff's retaliation claims.

## I.     BACKGROUND

Defendant hired Plaintiff on August 25, 2013 as a part-time Sales Transaction Associate ("STA") in the Home Sales department at Defendant's Roseville, Michigan store. Dkt. No. 27, Ex. 1 (Plaintiff's Deposition) at 126, 129-30 and Ex. 2 (Brandon Wood Declaration) at ¶ 4. Plaintiff was primarily responsible for assisting customers with selecting merchandise, providing technical information about Defendant's products, and partnering with other employees to ensure customer needs were met. *Id.* at Ex. 1 at 134, 188-90, 221; Ex. 2 at ¶5; Ex. 3 (Mario Vicencio Declaration) at ¶4. Plaintiff reported to Brandon Wood ("Wood"), the Home Sales Manager, and Mary Ayyoub ("Ayyoub"), the Home Sales Supervisor, who also reported to Wood. *Id.* at Ex. 1 at 129, 131-32; Ex. 2 at ¶ 4. Wood, in turn, reported to the Roseville store's General Manager, Mario Vicencio ("Vicencio"). *Id.* at Ex. 2 at ¶3; Ex. 3 at ¶3; and Ex. 4 (Ayyoub Declaration) at ¶5.

Defendant's sales staff works together as a team and provides support to each other so that customer needs can be met. *Id.* at Ex. 3 at ¶5; Ex. 2 at ¶5. Within weeks after Plaintiff's employment commenced, Wood claims he started to receive

complaints that Plaintiff had an aggressive demeanor and was not a team player. One member of the Home Sales staff told Wood that he/she was uncomfortable working with Plaintiff because Plaintiff: (a) frequently argued with coworkers; (b) told coworkers that he was better than them; and (c) believed coworkers should receive less sales credit than he did. *Id.* at Ex. 2 at ¶6; Ex. 3 at ¶5. Wood also received reports from some of Plaintiff's coworkers that Plaintiff refused to answer questions for other employee's customers and refused to assist with coworkers' transactions. *Id.* at Ex. 2 at ¶9.

In mid-October 2013, Wood asked Plaintiff if Plaintiff was "interested in going into being full-time since you already work the hours?" and Plaintiff responded, "Absolutely." *Id.* at Ex. 1 at 140. Plaintiff immediately submitted an internal application for a full-time Transaction Sales Associate position in the Home Sales department, with Wood's help and guidance through completing the application. *Id.* at Ex. 1 at 140-48. Wood told Plaintiff that Wood would contact Plaintiff in a few days for an interview, as Wood was the manager over the department where Plaintiff was seeking the full-time position and was responsible for making a determination on Plaintiff's application. *Id.* at Ex. 2 at ¶7; Ex. 5 (Home Sales Manager Job Description). Wood never interviewed Plaintiff for the full-time position. When Plaintiff asked Wood why Plaintiff did not get an interview, Wood would not tell Plaintiff why.

Plaintiff asserts that Ayoub told Plaintiff that the reason Plaintiff did not get an interview and the job is because Kyle Chamberlain ("Chamberlain"), then Defendant's Connectivity Manager at the Roseville store, told Wood not to give the job to Plaintiff because Chamberlain wanted to give the job to a friend's girlfriend (the girlfriend, who was white, also worked in the Home Sales department). *Id.* at Ex. 1 at 142-47, 199. According to Defendant's Motion, Plaintiff did not meet the requirements for the position, because in order to be promoted from a part-time to full-time position, Defendant requires employees to have demonstrated: (a) the willingness and ability to coach and train coworkers; and (b) mastery of product knowledge within the relevant department, which is obtained through customer interactions and by completing "e-learning" training modules for the products sold in the department where the position is being sought. *Id.* at Ex. 2 at ¶¶7-8. Wood claims that his personal observations and the reports he had received from Plaintiff's coworkers about Plaintiff's unwillingness to share information with them led Wood to conclude that Plaintiff did not meet the coworker coaching and training requirements. *Id.* According to Wood, Plaintiff also had not completed many of the required e-Learnings for the Home Sales department, having attained only bronze status, when silver status was necessary. *Id.* at Ex. 2 at ¶¶5, 7-8; Ex. 6 (Plaintiff's e-Learning Record).

A few days after Plaintiff submitted the application for full-time employment,

Wood told Plaintiff on the sales floor, and then held a meeting with Plaintiff to advise Plaintiff, that Plaintiff would not be considered for the position. *Id.* at Ex. 2 at ¶¶7-8; Ex. 1 at pp. 142-44. During the meeting, Wood states that he told Plaintiff that Plaintiff needed: (1) more experience with the products in Home Sales; (2) to complete additional e-Learnings and become silver certified; and (c) to demonstrate a willingness to teach, coach, and train his coworkers. *Id.* Defendant asserts that Plaintiff did not respond well to the news from Wood, as Plaintiff became agitated and loud at the meeting. *Id.* at Ex. 2 at ¶8. Wood claims he asked Plaintiff to calm down, but Plaintiff did not restrain his emotions. Wood told Plaintiff he would talk with him more at a later time, after Plaintiff had a chance to compose himself. *Id.* at Ex. 2 at ¶8.

When Plaintiff did not get the full-time position, he gave a two-week notice of his intention to quit to Vicencio. *Id*. at Ex. 1 at 147-48. Plaintiff testified that, after Ayoub (and Wood) talked to Plaintiff about staying with Defendant and moving to a different department headed by Josh Rosenau (the front lanes department), Plaintiff agreed to continue working for Defendant. *Id*. at Ex. 1 at 148. Chamberlain barred that transfer and required that Plaintiff continue to work in the Home Sales department, and Plaintiff responded that he would quit if not allowed to transfer. *Id*. at Ex. 1 at 148-49.

A few days after the discussion about Plaintiff's full-time application, Plaintiff

and Wood had another meeting, and Chamberlain, Defendant's Connectivity Manager at the Roseville store, was in the meeting room when Plaintiff and Wood began their conversation. *Id.* at Ex. 2 at ¶9; Ex. 8 (Chamberlain Declaration) at ¶5; Ex. 1 at 149-52. According to Wood, he spoke to Plaintiff about Plaintiff's performance and things Plaintiff needed to work on to improve. *Id.* at Ex. 2 at ¶9. Wood also talked to Plaintiff about becoming a temporary supervisor of other employees, such that Plaintiff would be evaluated on the success of the Home Sales department and not his individual sales. *Id.* at Ex. 1 at 150. Chamberlain agreed with Wood's proposal that Plaintiff become a temporary supervisor, but Chamberlain wanted to address one other "problem." Chamberlain stated that the problem was Plaintiff's "damn attitude," and stated to Plaintiff: (1) "You know you have an attitude problem, you know, you come off very threatening;" (2) "You're very street;" and (3) "You act like – you're just too ethnic." *Id.* at Ex. 1 at 150-51.[1]

Plaintiff began a supervisory position in the Home Sales department after that meeting. *Id.* at Ex. 1 at 152. Plaintiff contends that sales for the Home Sales department rose 100% but that his hours dropped almost in half two weeks later. *Id.*

---

[1]Chamberlain also made comments about "you people" on occasion. After Chamberlain made the "You're very street" and "too ethnic" comments, Plaintiff believed the "you people" comments had racial undertones. *Id.* at Ex. 1 at 190, 198-99.

at Ex. 1 at 152-53. At the end of October 2013, Wood contends he received another complaint about Plaintiff's aggressive demeanor, this time from a customer. *Id.* at Ex. 2 at ¶10. The customer reported to Wood that the customer had been shopping in the Home Sales department and had witnessed Plaintiff confront a co-worker about a sales dispute in a loud and aggressive manner and then ask the other sales associate to "step outside" to resolve the dispute. *Id.* Plaintiff admits that a conversation took place and that he asked his co-worker to "step outside," *id.* at Ex. 1 at 155-56, but Plaintiff asserts that he made the comment because Plaintiff and the coworker had a disagreement over sales credit and Plaintiff did not want to "cause a distraction in front of the customers." *Id.* The other employee involved, Jesse Barnes ("Barnes"), also confirmed that Plaintiff had asked him to "step outside," which Barnes believed was a threat and that Plaintiff wanted to fight him. *Id.* at Ex. 2 at ¶10.

On November 3, 2013, when Plaintiff showed up at the store approximately two hours before his shift was scheduled to begin, *id.* at Ex. 1 at 162-63, Wood asked Plaintiff to meet with Wood and Ayyoub to discuss the incident involving Barnes. *Id.* at Ex. 2 at ¶11. During the meeting, Plaintiff became agitated, removed his work shirt, and told Wood that Plaintiff was no longer going to work for Wood in the Home Sales department. *Id.* at Ex. 2 at ¶11; Ex. 4 at ¶¶6-9; *see also* Ex. 1 at 157-58, 162-64. Ayyoub states that she considered Plaintiff's temperament at the meeting volatile,

such that it seemed Plaintiff might hit Wood, and Ayyoub took out her phone so that she could be ready to call 911 if necessary. *Id.* at Ex. 4 at ¶7.

When the meeting ended, Wood advised Plaintiff that he would need to complete a voluntary separation form if Plaintiff was quitting. *Id.* at Ex. 1 at 163-64; Ex. 2 at ¶11; Ex. 4 at ¶8. Plaintiff did not complete the form because he was only refusing to work for Wood. *Id.* at Ex. 1 at 163. Plaintiff did not report for his scheduled shift that afternoon (November 3), missed his remaining four scheduled shifts that week (on November 6, 7, 8, and 9). He did not appear for his first scheduled shift for the following week (on November 10). *Id.* at Ex. 2 at ¶12; Ex. 1 at 164-65. Wood states that he understood Plaintiff's November 3, 2013 absence to be confirmation that Plaintiff had quit, and Wood contacted Defendant's human resources hotline that day to report the incident and request guidance. *Id.* at Ex. 2 at ¶12; Ex. 9 (HR Service Report No. 9472). Wood reported that Plaintiff spoke loudly during their meeting, and Plaintiff had verbally resigned his employment but refused to complete a voluntary separation form. *Id.*

After Plaintiff left the meeting, Plaintiff saw Vicencio in the parking lot and talked to Vicencio about the meeting with Wood and Ayoub. Vicencio told Plaintiff to contact Defendant's human resources department, and even though Plaintiff said he was supposed to work that afternoon, Vicencio told Plaintiff not to come back to

work until Plaintiff talked to human resources. *Id.* at Ex. 1 at 157-58, 164. Plaintiff called Defendant's human resources hotline on November 3, 2013 to complain about the incident with Wood. A report prepared by Defendant's human resources department reflects that Plaintiff spoke to a representative by phone on November 4, 2013, and complained that Wood had been assigning Plaintiff more work than necessary, which prevented Plaintiff from concentrating on his job. *Id.* at Ex. 10 (HR Service Report No. 0526); Ex. 1 at 158-59. Defendant's records do not contain any notation that Plaintiff complained about age or race discrimination on that call. *Id.* at Ex. 10.

Plaintiff testified at his deposition that he told human resources during the November 4, 2013 call that Plaintiff felt that "they're discriminatory because of my age." *Id.* at Ex. 1 at 158-59, 177, 179, 200. Plaintiff also testified that "I tried to talk to management numerous times before I had that [November 3rd] blow up with my leaders," Brandon and Mary. *Id.* at Ex. 1 at 186. Josh, . . . I talked to him about the problems I was having, and he talked to Mario [Vicencio]. And every time I talked to Mario about it, he told me he thought it was just a cultural issue." *Id.* Plaintiff stated that he had conversations with his managers where he complained about "racist statements" that Chamberlain had made to him and others in his department. *Id.* at Ex. 1 at 203-07.

Vicencio was assigned to conduct the investigation into Wood's and Plaintiff's complaints. During his investigation, Vicencio interviewed Wood and Ayyoub, and Vicencio had multiple conversations with Plaintiff. *Id.* at Ex. 3 at ¶¶7-10; Ex. 1 at 159-60. During their conversations with Vicencio, Wood and Ayyoub reiterated that Plaintiff had: (a) become aggressive and agitated at the November 3 meeting; (b) abruptly removed his work shirt; and (c) told Wood that he was quitting. *Id.* at Ex. 3 at ¶¶7, 9; Ex. 2 at ¶13; Ex. 4 at ¶9. Plaintiff told Vicencio a much different story. Plaintiff admitted that he had taken off his shirt and failed to report to work, but Plaintiff denied that he told Wood that he was quitting. Plaintiff indicated that he told Wood only that Plaintiff did not want to work for Wood anymore, not that Plaintiff was quitting his employment with Defendant. *Id.* at Ex. 3 at ¶9.

Because the information Vicencio received from Wood and Ayyoub conflicted with what Vicencio received from Plaintiff, Vicencio reinstated Plaintiff and gave Plaintiff full back-pay for the two weeks Plaintiff missed. *Id.* at Ex. 1 at 159, 16; Ex. 3 at ¶¶9-10. Vicencio had consulted Defendant's Attendance/Punctuality Policy and determined that the appropriate penalty for Plaintiff's failure to report to work on November 3, 2013 (and the subsequent events) was a final warning. *Id.* at Ex. 3 at ¶¶9-10; Ex. 11 (Attendance/Punctuality Policy). Under the Attendance Policy, employees who fail to report to work for a scheduled shift without notifying the

manager on duty are considered a no call/no show and issued a final warning for the first offense. *Id.* at Ex. 11 at 2; Ex. 12 (Plaintiff's Policy and Ethics Acknowledgment); Ex. 1 at 135-36.

At a meeting on November 15, 2013, Vicencio presented the final warning to Plaintiff, and  Plaintiff signed the final warning, even though Plaintiff did not agree with Defendant's finding that Plaintiff had not come to work on those days. *Id.* at Ex. 13 (Final Warning); Ex. 3 at ¶10; Ex. 1 at 159-60, 162. At that meeting, Vicencio explained to Plaintiff the significance of the final warning and advised Plaintiff that future attendance violations would lead to Plaintiff's termination. *Id.* at Ex. 3 at ¶10; Ex. 1 at 159-160, 162.  Vicencio allowed Plaintiff to transfer from the Home Sales department to the front lanes area of the store, where Plaintiff would be working under the supervision of Josh Rosenau, Multi-Channel Sales Manager. *Id.*  This was the position Plaintiff had previously discussed with Wood but been blocked by Chamberlain. *Id.* Plaintiff told Defendant's human resources department on November 14, 2013 that Plaintiff had spoken to Vicencio and "the matter has resolved. [Plaintiff] requested that the service request be closed." *Id.* at Ex. 1 at 178.   Plaintiff's 40th birthday was on November 19, 2013. *Id.* at Ex. 20 (at PgID 470).

Plaintiff was scheduled to work 20 hours in the front lanes department, but after Chamberlain said something to another manager, Plaintiff's hours were reduced from

20 to 8; and even though allegedly hours were reduced for everyone, Plaintiff states

that he learned that other employees did not have their hours reduced. *Id.* at Ex. 1 at

161-62.

Plaintiff missed three consecutive scheduled shifts, on December 3, 4, and 6,

2013. *Id.* at Ex. 3 at ¶¶6, 11; Ex. 1 at 165.  On December 3, 2013, Plaintiff's car would

not start, and he contacted Vicencio, who told Plaintiff to get to the Roseville store

when Plaintiff could that day and later told Plaintiff not to bother coming in when

Plaintiff's car still would not start. *Id.* at Ex. 1 at 165-66.  The next day, Plaintiff

contacted Vicencio when the car was repaired to let Vicencio know Plaintiff was

headed in to work.  Vicencio told Plaintiff that Plaintiff would have to talk to Josh

Rosenau before Plaintiff returned to work.  *Id.* at Ex. 1 at 166-67.  For the next several

days, Plaintiff did not work and did not hear from Josh Rosenau. *Id*. at Ex. 1 at 167-

68.

After Plaintiff's third consecutive absence on December 6, 2013, the manager

on duty, Chamberlain, notified the human resources department of Plaintiff's latest

absences and the final warning that Plaintiff had signed *vis a vis* the November 3,

2013 no call/no show. *Id*. at Ex. 14 (HR Service Report No. 7335) at 17-19; Ex. 8 at

¶¶7-8.  After reviewing documentation of Plaintiff's attendance record, the final

warning, and a statement confirming that Plaintiff had not reported for his scheduled

shifts, Defendant's human resources department confirmed that Plaintiff: (1) had violated his final warning and the Attendance Policy; and (2) was subject to termination. *Id.* at Ex. 3 at ¶¶11-12; Ex. 11 at 2.

On December 11, 2013, Defendant's human resources representative assigned to the matter provided a template Involuntary Separation Notice ("ISN") to be used for Plaintiff's termination. *Id.* at Ex. 14 at 9-10, 17; Ex. 8 at ¶9. Over the next two days, Chamberlain left Plaintiff a few phone messages asking to arrange a time to discuss Plaintiff's absences. *Id.* at Ex. 8 at ¶9. On December 13, 2013, Chamberlain reached Plaintiff by phone and asked him to come to the store to discuss Plaintiff's absences, but Plaintiff refused to do so. As a result, Chamberlain conducted the meeting by phone. *Id.* Chamberlain states that he advised Plaintiff that Plaintiff was being terminated for violating the Attendance Policy while on Final Warning. *Id.* Wood was present for the phone meeting, but he did not participate. *Id.*; Ex. 2 at ¶14. After the meeting, Chamberlain completed the ISN and submitted it to human resources for processing. *Id.* at Ex. 15; Ex. 8 at ¶9. Plaintiff agrees that Chamberlain called Plaintiff to tell Plaintiff that he was fired, *Id.* at Ex. 1 at 167-68, but Plaintiff states that Chamberlain told Plaintiff the termination was because the FBI had come to Defendant's Roseville store looking for Plaintiff. *Id.* at Ex. 1 at 183.

On December 17, 2013, Plaintiff submitted an internal appeal to request review

of his termination. In his appeal form, Plaintiff stated that he had missed his scheduled shifts because he had car problems and had been addressing an arrest warrant that he just learned had been issued against him. *Id.* at Ex. 16 (Appeal Form); Ex. 1 at 180-83. In a March 3, 2014 e-mail to Defendant's human resources department, Plaintiff supplemented his appeal with additional information and allegations, including, for the first time in writing, allegations that he had been subject to age and race discrimination at the Roseville store. *Id.* at Ex. 17 (Investigation File) at 7-9, 76-80.

In response to Plaintiff's appeal, Defendant conducted an investigation process that involved interviewing at least eight of Defendant's employees and obtaining statements from at least two others. *See generally id.* at Ex. 17. At the conclusion of the investigation, Defendant advised Plaintiff that Defendant was unable to substantiate Plaintiff's allegations that he was treated less favorably than other employees due to his race or age. *Id.* at Ex. 17 at 81.

Plaintiff filed a charge with the Michigan Department of Civil Rights ("MDCR") and the U.S. Equal Employment Opportunity Commission ("EEOC") on April 1, 2014, alleging he was treated differently than other employees at Defendant's Roseville store because of his age, race, and sex and that he was terminated because his age, race, and sex. *Id.* at Ex. 8 (at PgID 444). On July 15, 2015, Plaintiff amended his complaint with the MDCR to reflect that he was treated differently and terminated

based on age, race, and retaliation. *Id.* at Ex. 8 at PgID 445. On November 10, 2015, the MDCR dismissed Plaintiff's complaint due to "insufficient evidence to proceed." *Id.* at Ex. 18 (at PgID 446).

Plaintiff filed the instant lawsuit on March 7, 2016. Dkt. No. 1. In his Complaint, Plaintiff alleged that Defendant: (1) failed to promote him; and (2) terminated him because of his race and age and in retaliation for reporting the manager who fired him to human resources. *Id* (at PgID 2). The legal bases for Plaintiff's claims, according to his Complaint, are, "Title VII of the Civil Rights Act of 1964 and/or the Elliot-Larsen Civil Rights Act." *Id.*

## II.   STANDARD OF REVIEW

Summary judgment is appropriate in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of demonstrating that summary judgment is appropriate. *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974). The Court must consider the admissible evidence in the light most favorable to the nonmoving party. *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added). To create a genuine issue of material fact, the nonmovant must do more than present "some evidence" of a disputed fact. Any dispute as to a material fact must be established by affidavits or other documentary evidence. Fed. R. Civ. P. 56(c). "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (citations omitted). Accordingly, a nonmovant "must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich. 1993) (citations omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.

## III.  ANALYSIS

Plaintiff, at the time proceeding *pro se*, filed a form "Complaint of Employment Discrimination" in this Court on March 7, 2016. The Complaint alleges that Defendant discriminated against Plaintiff on the basis of his race and age, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and the

Michigan Elliot-Larsen Civil Rights Act ("ELCRA"). Plaintiff has testified that the only persons associated with Defendant who discriminated against Plaintiff were Chamberlain and Wood. Dkt. No. 27, Ex. 1 at 215. Plaintiff contends that: (1) Chamberlain discriminated against Plaintiff on the basis of race, *id*. at Ex. 1 at 209, 211, 213; (2) Wood discriminated against Plaintiff on the basis of age, *id.* at Ex. 1 at 200, 209, 213; and (3) Chamberlain and Wood retaliated against Plaintiff because Plaintiff complained that they were discriminating against Plaintiff. *See, e.g.,* Dkt. No. 1 (at PgID 2).

## A.      Title VII and ELCRA Discrimination Generally

Under both Title VII and ELCRA, a "plaintiff bringing a[n] . . . employment discrimination claim must present either direct evidence of discrimination, or circumstantial evidence that allows for an inference of discriminatory treatment." *Reeder v. City of Wayne*, 177 F.Supp.3d 1059, 1079 (E.D. Mich. 2016) (citing *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003)).

"Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furniture, Inc.*, 3137 F.3d 564, 570 (6th Cir. 2003). "Direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544,

548 (6th Cir. 2004). For circumstantial evidence, the analysis is different.

> When a plaintiff seeks to prove racial discrimination by circumstantial evidence, the court applies the *McDonnell Douglas* framework. First, a plaintiff must establish a prima facie case of discrimination by showing that: (1) she is a member of a protected class; (2) that she was qualified for the job and performed her duties satisfactorily; (3) that despite her qualifications and performance, she suffered an adverse employment action; and (4) that she was replaced by a person outside of the protected class or was treated less favorably than a similarly situated individual outside of the protected class. If a plaintiff establishes a prima facie case of discrimination, the burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection.

*Hawthorne-Burdine v. Oakland Univ.*, 158 F. Supp. 3d 586, 604 (E.D. Mich. 2016) (internal citations omitted) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). "Circumstantial evidence . . . is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Wexler*, 317 F.3d at 570.

If a plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment action against the plaintiff. *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003); *McDonnell Douglas*, 411 U.S. at 805. Once the defendant offers a legitimate, non-discriminatory reason for its conduct, the burden shifts back to the plaintiff to demonstrate that the defendant's stated basis for the adverse employment action is a pretext designed to mask discrimination. *Texas Dept. Comm.*

*Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *McDonnell Douglas*, 411 U.S. at 805.

A plaintiff can establish pretext by producing evidence sufficient for a jury to reasonably reject the defendant's explanation and infer that the defendant intentionally discriminated against the plaintiff. *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000) ("A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct"). A plaintiff can not establish a prima face of age discrimination based on vague, ambiguous or isolated remarks. *Hein v. All America Plywood Co., Inc.*, 232 F.3d 482, 488 (6th Cir. 2000) (citation omitted).

"Throughout this burden shifting, [t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (citations and internal quotations omitted). "The plaintiff cannot rely purely on 'mere personal belief, conjecture and speculation' as they are insufficient to support an inference of discrimination." *Woythal v. Tex–Tenn Corp.*, 112 F.3d 243, 247 (6th Cir. 1997) (citation omitted).

**B.     No Age Discrimination**

Plaintiff's allegations of age discrimination are limited to the statements and

19

actions by Wood *vis a vis* putting Plaintiff in a different program than two other employees hired at the same time as Plaintiff.[2]  Plaintiff argues that Wood said Plaintiff was "in a different program because of [Plaintiff's] age." Dkt. No. 27, at Ex. 1 at 215.  Wood told Plaintiff that Plaintiff was on a separate program from those other two employees because Plaintiff was on track to be a manager, whereas they were only temporary sales associates. *Id*. at Ex. 1 at 179.  Wood said Plaintiff was being treated differently and put "on the program to be manager," which was "a more elevated path," because of Plaintiff's "age" (Plaintiff was 39 at that time) and "experience," such that Plaintiff "could eventually get a better job or a higher paying job than th[o]se other folks." *Id.* at Ex. 1 at 179-80, 199-200.  Wood gave Plaintiff more job responsibilities, such as paperwork and training of other employees, than the other two employees hired with him. *Id*. at Ex. 1 at 197, 200-03.  Plaintiff stated that those two employees were "two young black girls, they were like 18 and 19 years old." *Id.* at Ex. 1 at 200.

The Court cannot find, as a matter of law, that placing Plaintiff in a different program – requiring different results – than the other two employees constitutes

---

[2]Plaintiff admitted that age was not a factor with respect to: (a) his failure to be promoted; (b) his termination; or (c) any retaliation against him. *See* Dkt. No. 27, PgID 241 (at 211) and PgID 242 (at 214).

evidence of age discrimination, for several reasons.  First, there is no evidence that Plaintiff and the other two employees were similarly situated.  The other two employees were part-time, temporary employees, who were not seeking full-time employment.  Plaintiff was 39 years old and wanted to work full-time, obtain benefits, and become a manager.

Second, Plaintiff was only 39 at the time that these events transpired.  Plaintiff's November 4, 2013 complaint to Defendant's human resources department regarding Wood's alleged age discrimination had been resolved by November 15, 2013, when at his request, Plaintiff was transferred from the Home Sales department (and out of the management program at issue) to the front lanes.  That was four days before Plaintiff turned 40 years old on November 19, 2013, so there is no evidence that Wood  was involved (or that Plaintiff's age was relevant) in any action taken with respect to Plaintiff on or after November 19, 2013.

Third, discrimination requires a finding that Plaintiff suffered an adverse action such as discharge, a material loss of benefits, a demotion, a refusal to hire, or the refusal to promote. *See, e.g., Lee v. Cleveland Clinic Foundation*, 676 F. App'x 488, 494 (6th Cir. 2017); *Dye v. Office of the Racing Comm'n* 702 F.3d 286 (6th Cir. 2012).  The manner in which Wood allegedly treated Plaintiff differently than the other two employees was beneficial to Plaintiff, not adverse to his interests.  As

Plaintiff's deposition testimony reflects, Plaintiff was put on a management program when he started with Defendant, a position that afforded Plaintiff more opportunities for advancement, and an elevated path that would allow him to get a better job or a higher paying job than the other employees. Dkt. No. 27, Ex. 1 at 179. Plaintiff even acknowledged that Wood "was actually offering [Plaintiff] something better because of [Plaintiff's] age and . . . experience." *Id*. The management program also put Plaintiff on track to be eligible for health care benefits, one of the reasons that Plaintiff wanted to work for Defendant in the first place. *See* Dkt. No. 29 (at PgID 475).

The Court concludes that there is no evidence that Defendant or any of its employees, including Wood, discriminated against Plaintiff on the basis of age. The Court grants Defendant's Motion as it relates to Plaintiff's age discrimination claim.

## C. Race Discrimination

Plaintiff contends that Defendant (Chamberlain) racially discriminated against Plaintiff when making the following decisions: (1) not hiring Plaintiff full-time in October 2013, (2) denying Plaintiff a transfer to work in the front lanes department in October 2013; and (3) terminating Plaintiff in December 2013.[3]

### 1. *Direct Evidence*

---

[3]Plaintiff does not argue that his race was a factor in being placed in a different program than the other two employees who started when Plaintiff did (two African-American women) or any other employees.

Plaintiff suggests that there is direct evidence of discrimination. Although it is a very close call, the Court finds that there are no statements that constitute direct evidence of race discrimination. The primary comments made by Chamberlain upon which Plaintiff relies to show direct evidence of racial discrimination were that Plaintiff was "very street" and "was just too ethnic," comments Chamberlain made in mid-October 2013 during a meeting in which Wood talked to Plaintiff about performance issues and/or becoming a temporary supervisor of other employees. Plaintiff also cites Chamberlain's alleged occasional references to "you people," although the timing and context of such comments are not clear.

The Court finds that "you people" comments, in the absence of any context, are too vague to constitute direct evidence of race discrimination, as they do not establish the relevancy of race without requiring inferences to be made. The "just too ethnic" statement technically relates to ethnicity, not race, and the words "very street" do not, on their face, apply only to an African-American person. In the United States, however, when the "very street" or "just too ethnic" terms – alone or especially when used together – are directed at an African-American, they will (almost) universally be understood by that or any other African-American (and likely most non-African-American residents) to be a reference to race.

Although it is a close call, the Court holds that the use of the terms "very street"

and "just too ethnic" by Chamberlain to Plaintiff does not establish as fact that Chamberlain was commenting on Plaintiff's race, such that those terms constitute direct evidence of race discrimination. With great reservation, the Court concludes that, in order to establish that any or all of the identified comments ("you people," "very street," and "just too ethnic") centered on race, the factfinder must make an inference as to their meanings. Accordingly, the Court finds that Plaintiff has not established that there is direct evidence of race discrimination with respect to his claims.

2.    *Circumstantial Evidence*

The Court finds that Plaintiff cannot establish a prima facie case of race discrimination by Defendant (Chamberlain) with respect to his claims based on: (a) the reduction of Plaintiff's hours, (b) the denial of Plaintiff's transfer to the fast lanes department in October 2013, and (d) Plaintiff's termination. Plaintiff has offered no evidence regarding any of those three claims that he "was replaced by a person outside of the protected class or was treated less favorably than a similarly situated individual outside of the protected class." *See Hawthorne-Burdine*, 158 F.Supp.3d at 604 (citations omitted).

The Court finds that Plaintiff has established a prima facie case with respect to his claim that the failure to be promoted to the full-time position in October 2013 was

due to race discrimination by Defendant (Chamberlain). First, it is undisputed that Plaintiff, an African-American, was a member of a protected class. Second, there is evidence Plaintiff was qualified for all relevant positions. As to the full-time position that Plaintiff was denied, Plaintiff's supervisor (Wood) asked Plaintiff if Plaintiff was interested in becoming a full-time employee, urged Plaintiff to apply for the full-time position, and helped Plaintiff fill out the internal application for the position. Dkt. No. 27, Ex. 1 at 140-41. A reasonable factfinder could conclude that Wood, as Plaintiff's supervisor, would not have urged Plaintiff to apply for the full-time position if Plaintiff was not qualified for that position. The Court further notes that, when Plaintiff gave two-weeks notice of his intent to quit upon being denied the full-time position, Defendant's employees, including Wood and Ayoub, encouraged Plaintiff to continue working for Defendant because he was a good employee. *Id.*; Dkt. No. 27, 228 (at 142-43, 150). Finally, in November 2013, rather than terminating Plaintiff when there was evidence that would have supported terminating Plaintiff, Vicencio brought Plaintiff back to work for Defendant and transferred Plaintiff to the front lanes department.

Third, despite the evidence that Plaintiff was qualified for the full-time position, Plaintiff suffered an adverse employment action when he was not promoted to the full-

time position.[4] Fourth, the person hired for the full-time position was a white woman, even though she was unavailable to fill the position for a month. *Id.* at Ex. 1 at 197-200, 212-13.

There is no dispute that Defendant has articulated legitimate, non-discriminatory reasons for denying Plaintiff the full-time position in October. Defendant has offered evidence that it did not promote Plaintiff to full-time in October 2013 because Plaintiff had not attained silver status on e-learning, needed more experience with the products in the Home Sales department, and had not expressed a willingness to teach, coach, and train his coworkers.

A reasonable factfinder, however, could find Defendant's reasons to be pretextual. Plaintiff only filled out an internal application after being urged to do so by – and with the help of – Wood. As Plaintiff's supervisor, Wood seemingly would have known if Plaintiff was qualified for the position. Only days after encouraging Plaintiff to apply for the full-time position (and helping him fill out the application), however, Wood told Plaintiff that Plaintiff had not been there long enough and that

---

[4]The Court notes that other events about which Plaintiff has complained of race discrimination also constituted adverse employment actions. Specifically, the following events were adverse employment actions: (a) the reversal and denial of Plaintiff's transfer from the Home Sales department to the front lanes department in October 2013; (b) having his hours reduced in October and November 2013; and (c) being terminated in December 2013.

Plaintiff was not qualified for the position. *Id.* at Ex. 1 at 142, 146. Wood's explanation to Plaintiff is undermined and called into question by Ayoub communicating to Plaintiff that: (1) Chamberlain told Wood not to hire Plaintiff because the girlfriend of a friend of Chamberlain's wanted the position (the girlfriend also worked at the Roseville store); and (2) Chamberlain hired the white girlfriend. *Id.* at Ex. 1 at 142-44, 146-47.

Those facts mean that there is evidence that Chamberlain (the decisionmaker regarding the full-time position): (1) made his hiring decision on a different basis than what Wood communicated to Plaintiff; (2) hired a white employee to fill the full-time position Plaintiff was denied; and (3) told Plaintiff he was "very street" and "too ethnic," two terms that a reasonable factfinder could determine were derogatory references to Plaintiff being African-American. *Id.* at Ex. 1 at 151).[5] Based on those facts, the Court concludes that a reasonable factfinder could determine that Defendant's legitimate, non-discriminatory reason to deny Plaintiff the full-time position was pretextual. *A.B. Dick Co.*, 231 F.3d at 1021 (pretext can be shown if "the proffered reason (1) has no basis in fact, [and/or] (2) did not actually motivate the

---

[5]The Court also notes that Vicencio thought the problems Plaintiff was having were "just a cultural issue," *id.* at 237 (at 186), which also could be interpreted to mean that Plaintiff's race was a factor in any decision Chamberlain made *vis a vis* Plaintiff.

defendant's challenged conduct[.]").

The Court finds there is an absence of a genuine dispute of material fact regarding – and grants Defendant's Motion with respect to – Plaintiff's claim of race discrimination pertaining to the denial of Plaintiff's transfer to the fast lanes department in October 2013, the reduction of Plaintiff's hours in October and November 2013, and Plaintiff's termination. The Court finds there is a genuine dispute of material fact regarding – and denies Defendant's Motion with respect to – Plaintiff's claim of race discrimination related to the failure to hire Plaintiff for the full-time position in October 2013.

## D.    Retaliation

Plaintiff has alleged that both Wood and Chamberlain retaliated against Plaintiff for the complaints Plaintiff made about them to management while working for Defendant. Dkt. No. 1, PgID 2; Dkt. No. 27, Ex. 1 at 197, 222-23.

There is no direct evidence that Chamberlain or Wood retaliated against Plaintiff due to complaints Plaintiff made to Defendant's human resources department or other managers at Defendant's Roseville store. Neither Chamberlain, Wood, nor any other person affiliated with Defendant stated or indicated that Plaintiff's termination – or any action taken by Defendant after Plaintiff made his November 4, 2013 complaint to Defendant's human resources department or otherwise complained

to management about age or race discrimination – was connected to Plaintiff filing any one or more of those complaints. For the reasons that follow, however, the Court concludes that there is circumstantial evidence that Chamberlain retaliated against Plaintiff for Plaintiff's complaints to management regarding race discrimination by Chamberlain.

The *McDonnell Douglas* burden-shifting framework governs claims of retaliation based on circumstantial evidence. *Ladd v. Grand Trunk W. R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009). To establish a prima facie case of retaliation under Title VII, a plaintiff has the initial burden of establishing four elements: (1) the plaintiff engaged in protected activity; (2) the defendant knew about the plaintiff's exercise of this right; (3) the defendant took an employment action adverse to the plaintiff; and (4) the protected activity and the adverse employment action are causally connected. *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001). If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to offer a legitimate, non-discriminatory reason for its action. *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008) (citation omitted). If the employer meets that burden, it is the plaintiff's burden to demonstrate, by a preponderance of the evidence, that the legitimate reason given by the employer was pretext for retaliation. *Id.*

Defendant argues that Plaintiff's retaliation claim fails both the first and fourth

elements of the prima facie analysis and must be dismissed. Defendant asserts that Plaintiff has not produced any documentary evidence that Plaintiff made a report to anyone at Defendant about race or age discrimination. Defendant relies on its records and human resource service reports. Plaintiff testified, however, that he made reports of age and race discrimination by Wood and Chamberlain, respectively, to Defendant's human resources department on November 4, 2013, as well as complaints to managers at the Roseville store on other occasions that he was being subjected to race and age discrimination. There is no evidence that Defendant (or applicable law) requires that an employee such as Plaintiff submit a written document complaining of age or race discrimination in order to establish that Plaintiff was engaged in protected activity.

The Court concludes that there is evidence in the record from which a reasonable factfinder could determine that Plaintiff engaged in protected activity that prompted the Chamberlain's alleged retaliation. The protected activity includes Plaintiff's November 4, 2013 complaint to Defendant's human resources department, together with Plaintiff's conversations with other managers. Plaintiff testified that he reported both Wood's alleged age discrimination and the racist statements Chamberlain made to Plaintiff, specifically the "very street" and "just too ethnic" comments, which, as noted above, constitute circumstantial evidence of race

discrimination. Dkt. No. 27, Ex. 1 at 203-07.[6]

Defendant next contends there was no causal connection between Plaintiff's purported protected activity and the adverse actions to which Plaintiff was subjected, but Defendant's contention is based on the premise that Plaintiff did not complain about the age or race discrimination until Plaintiff sent Defendant the March 3, 2014 e-mail (months after Plaintiff was terminated). Defendant's premise ignores the facts of this case viewed in a light most favorable to Plaintiff. The facts viewed in a light most favorable to Plaintiff are that: (1) Plaintiff complained to Defendant's human resources department on or about November 4, 2013 that Chamberlain racially discriminated against Plaintiff; (2) Plaintiff made other complaints to management regarding age and race discrimination by Wood and Chamberlain, respectively; and (3) Plaintiff's complaints were made at least a month before he was terminated by Chamberlain, one of the persons about whom Plaintiff complained. Defendant does not challenge that Chamberlain or Wood knew that Plaintiff made the November 4, 2013 complaint to Defendant's human resources department or the other complaints Plaintiff made to management. Defendant also does not dispute that Chamberlain: (1)

---

[6]As set forth above, although the "you people" comments allegedly were made on numerous occasions to Plaintiff and others, they were vague, as there is no evidence of when or the context in which they were made. Those statements are not treated as protected activity for purposes of this Order.

terminated Plaintiff; (2) denied Plaintiff's transfer to the front lanes department in October 2013; and (3) reduced Plaintiff's hours in October and November 2013 (or caused Plaintiff's hours to be reduced at those times). Based on those facts, the Court concludes that Plaintiff has established a prima facie case of retaliation with respect to Plaintiff's termination, the denial of the transfer to the front lanes department in October 2013, and the reduction of Plaintiff's hours in October and November 2013.

The Court finds that Defendant had a legitimate, non-discriminatory reason for terminating Plaintiff. Defendant has stated that Plaintiff violated the Attendance Policy after he had signed a Final Warning, and it is undisputed that Plaintiff had numerous absences after signing the Final Warning. Even though it is disputed whether the absences were excused or unexcused, the Court will assume for purposes of this Order that Defendant's stated reason for terminating Plaintiff was legitimate and non-discriminatory. For the reasons that follow, however, the Court concludes that a reasonable factfinder could reject Defendant's legitimate, non-discriminatory reason terminating Plaintiff in December 2013 as mere pretext for retaliation.

First, it is undisputed that Plaintiff called into work on December 3 and 4, 2013, explained that he had trouble with his car and need to get it repaired. Plaintiff talked to Vicencio multiple times on those days, and Vicencio told Plaintiff that Plaintiff did not need to come to work on December 3, 2013. Then, on December 4, 2013, when

Plaintiff told Vicencio that Plaintiff was headed into work, Vicencio told Plaintiff not to come to work on December 4, 2013 or subsequent days, until Rosenau contacted Plaintiff. There is no evidence that Rosenau contacted Plaintiff before December 6, 2013, the third day that Plaintiff allegedly failed to come to work, and it appears that Plaintiff was not contacted until December 11, 2013, when Chamberlain first left Plaintiff a voicemail message. A reasonable factfinder could conclude that it was unreasonable for an employer to treat an employee as absent (excused or unexcused) when the employer directs the employee not to go to work.

Second, when Plaintiff was terminated by Chamberlain, Plaintiff states that Chamberlain told Plaintiff the basis for Plaintiff's terminated was that the FBI was at the Roseville store looking for Plaintiff. For purposes of this Motion, however, Defendant has represented that Plaintiff was terminated for violating the Attendance Policy. A reasonable factfinder could conclude that the conflicting reasons given for Plaintiff's termination is evidence that the Plaintiff's absences were not the real (and a legitimate, non-discriminatory) reason that Defendant terminated Plaintiff.

Third, there is evidence that the person who terminated Plaintiff (Chamberlain) said to Plaintiff that Plaintiff was "very street" and "just too ethnic," two terms that a reasonable factfinder could conclude were derogatory references to Plaintiff being African-American. Dkt. No. 27, Ex. 1 at 151. Based on all those facts, the Court

concludes that a reasonable factfinder could determine that Defendant's legitimate, non-discriminatory reason to terminate Plaintiff was pretextual. *A.B. Dick Co.*, 231 F.3d at 1021 (pretext can be shown if "the proffered reason (1) has no basis in fact, [and/or] (2) did not actually motivate the defendant's challenged conduct[.]").

The Court notes that Defendant has offered no legitimate, non-discriminatory reason for Defendant's decision to reverse and deny Plaintiff's transfer to work in the front lanes department in October 2013. There is evidence, however, that Chamberlain blocked Plaintiff's initial scheduled transfer to the front lanes department in October 2013, *id.* at Ex. 1 at 148, and Chamberlain made the "very street" and "too ethnic" comments during a meeting between Wood and Plaintiff about the same time. *Id.* at Ex. 1 at 149-51. Defendant also offered no legitimate, non-discriminatory reason for Plaintiff's hours being reduced: (a) within two weeks of the meeting at which Chamberlain made the "very street" and "too ethnic" comments and Plaintiff had been made a temporary supervisor; and (b) again, right after Vicencio brought Plaintiff back to work and transferred Plaintiff to the front lanes department. There is evidence that Plaintiff's performance did not deteriorate or otherwise warrant his hours being reduced at those times.

For the reasons set forth above, the Court concludes that there is a genuine dispute of material fact regarding whether Defendant (Chamberlain) retaliated against

Plaintiff when: (a) Plaintiff's transfer to the front lanes department in October 2013 was reversed and denied; (b) Plaintiff's hours were reduced in October and November 2013; and (c) Plaintiff was terminated in December 2013.

The Court notes that Plaintiff has not offered any evidence that Wood participated in making any adverse employment decisions *vis a vis* Plaintiff, except for communicating to Plaintiff that Plaintiff would not be interviewed for the full-time position in October 2013. There is no evidence in the record that Plaintiff made any complaints regarding Wood or Chamberlain by the time the decision was made to deny Plaintiff an interview for the full-time position in October 2013. Accordingly, the Court holds that any retaliation claims pertaining to: (a) Wood; or (b) Plaintiff not getting the full-time position in October 2013 must be dismissed as a matter of law.

Accordingly, Defendant's Motion is granted in part and denied in part with respect to Plaintiff's retaliation claims.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 27] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Plaintiff's claims of age discrimination are **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff's claim of race discrimination **REMAINS** with respect to Plaintiff being denied the full-time position to which he applied in October 2013.

**IT IS FURTHER ORDERED** that Plaintiff's claims of retaliation **REMAIN** as they relate to Chamberlain's decisions to: (a) reverse and deny Plaintiff's transfer to the front lanes department in October 2013; (b) reduce Plaintiff's hours in October and November 2013; and (c) terminate Plaintiff in December 2013.

**IT IS SO ORDERED.**

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated:  September 28, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 28, 2018, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager